## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

CAMERON R.S.,[1]

      Plaintiff,

v.                                  Civil Action No. 4:21-cv-116

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

### REPORT AND RECOMMENDATION

      Plaintiff Cameron R.S. seeks judicial review of the Commissioner of Social Security's denial of his claim for disability benefits ("DIB") under the Social Security Act. Specifically, Plaintiff contends that the Commissioner's Administrative Law Judge ("ALJ") improperly evaluated the medical opinions and Plaintiff's subjective complaints, resulting in a residual functional capacity ("RFC") that he alleges is not supported by substantial evidence. Plaintiff also claims that the Appeals Council ("AC") should have found that new evidence submitted after the hearing would have changed the ALJ's decision. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. This Report finds no error in the ALJ's assessment of the evidence and therefore recommends that the court grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

# I.    PROCEDURAL BACKGROUND

On July 3, 2019, Plaintiff initially filed for DIB.[2]  (R. 231).  Plaintiff alleged disability beginning January 9, 2019, which was subsequently amended to January 17, 2019.  Id.  Plaintiff claimed disability based on post-traumatic stress disorder ("PTSD"), depression and anxiety disorder, and degenerative disc disease. (R. 195).  The state agency denied his application initially and on reconsideration. (R. 231).  He then requested an administrative hearing, which was held on July 29, 2020.  Id.  A non-attorney representative accompanied Plaintiff at the hearing, and an impartial vocational expert ("VE") testified.  Id.  The ALJ found that Plaintiff was not disabled. (R. 242).  Plaintiff appealed, and on November 18, 2020, the AC remanded the matter for a new hearing, directing the ALJ to consider a certain medical source statement.  (R. 249) (referring to R. 1351-61).

On February 22, 2021, the ALJ held another hearing.  (R. 28, 59).  Plaintiff was represented by counsel and by a non-attorney representative, and an impartial VE testified. (R. 28).  On March 4, 2021, the ALJ again denied Plaintiff's claims for DIB, finding he was not disabled during the period alleged.  (R. 47).  Plaintiff again appealed the ALJ's decision, submitting additional evidence for the AC's review. (R. 2). On July 7, 2021, the AC denied Plaintiff's request for review. (R. 1).  The AC found that the new evidence did "not show a reasonable probability that it would change the outcome of the decision." (R. 2).

On September 10, 2021, Plaintiff filed his complaint in this court.  Compl. (ECF No. 1). Plaintiff seeks judicial review of the Commissioner's final decision that he was not entitled to an award of DIB, claiming "[t]hat the decision of the Commissioner of Social Security is contrary to

---

[2] Plaintiff previously filed for DIB on May 12, 2016, alleging disability from October 1, 2015. (R. 179). That claim was denied initially and again on reconsideration. Id. On January 11, 2019, the ALJ issued an unfavorable decision which Plaintiff did not appeal. (R. 189).

the law and its provision as found in the Social Security Act." Id. ¶ 18 (ECF No. 1, at 3).  On February 4, 2022, Plaintiff moved for summary judgment. (ECF No. 11).  Plaintiff argues that the case should be reversed or remanded because the ALJ failed to properly evaluate the medical evidence, failed to properly evaluate his subjective complaints, and did not consider new evidence before the AC.  Mem. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem.") (ECF No. 12, at 12, 21, 23).  On March 7, 2022, the Commissioner opposed Plaintiff's motion and moved for summary judgment. (ECF No. 14).  The Commissioner argues that the ALJ's decision is supported by substantial evidence, that the ALJ appropriately evaluated the opinion and subjective evidence, and that the evidence before the AC was not new or material.  Mem. Supp. Def.'s Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Opp'n") (ECF No. 15, at 1-2).  Plaintiff did not reply, and the time for doing so has expired.  After a review of the record, this Report considers each of these arguments.

## II.      FACTUAL BACKGROUND

Plaintiff was born on August 8, 1973, and at the time of the ALJ's decision, he was 47 years old.  (R. 45).  Plaintiff met the insured status requirements under the Social Security Act until December 31, 2020. (R. 31).  He has not engaged in substantial gainful activity since January 9, 2019, the alleged onset date. Id.  He has at least a high school education and has reported past work as warehouse records clerk. (R. 45).

### A.      Plaintiff's Health Treatment

Plaintiff's arguments in this court do not require a complete review of his medical history as he disputes only the ALJ's assessment of the medical history concerning his current mental health impairments.

Plaintiff received mental health treatment with Veterans Affairs ("VA") from February to December 2018. (R. 661, 581).  In May 2019, Plaintiff returned for treatment. (R. 577-78).  He

reported a "down" mood and said he was depressed, in part because he could not work, but he was also alert, cooperative, and oriented without suicidal ideation. (R. 578). Plaintiff was assigned to Mohammed Afzal, D.N.P. (Doctor of Nursing Practice). (R. 568).

In July 2019, Afzal documented Plaintiff's reported symptoms, including 7/10 depression and 7/10 anxiety, trauma-related nightmares and avoidance behaviors, irritability, hypervigilance, difficulty concentrating, and trouble sleeping. (R. 569). Plaintiff denied suicidal ideation or delusions. Id. His appearance and attitude were good, his speech normal, and he was "hanging in there." Id. He denied feeling "hopeless or helpless." (R. 572). Afzal diagnosed Plaintiff with major depressive disorder and PTSD by history. (R. 574). He continued Plaintiff on four psychotropic medications. Id. (prescribing Wellbutrin, Lexapro, Buspar, and Trazodone). In September 2019, Plaintiff told Afzal that his mood was "rough." (R. 852). He again had 7/10 anxiety and depression. Id. Plaintiff reported that he stayed home and avoided crowded places. Id. Afzal continued Plaintiff's medication. (R. 855).

Plaintiff continued to treat with Afzal with similar findings. In November and December 2019, his mental status examinations were essentially the same, (R. 998-99, 986-87), with Plaintiff reporting in December that "his depression [was] the same," (R. 985). He reported compliance with medications, id., which Afzal refilled, (R. 989). In April 2020, Plaintiff said his mood was "hard" and "that his depression [was] the same." (R. 1344). His mental status exam showed a good appearance and attitude, with a low suicide risk and logical thought process. (R. 1345). On June 12, 2020, a phone technician noted that Plaintiff engaged in the conversation, asked relevant questions, and displayed a stable mood. (R. 1339). Plaintiff reported to Afzal during an appointment several days later that he was "isolat[ing] more as he can't even go to the gym." (R. 1332). His mood was "so, so." (R. 1332). Afzal continued his medications. (R. 1336). Later

that month, Plaintiff's mood was "ok," and he was "confined to the house and feeling depressed and lonely." (R. 1322). His mental status exam was largely the same as prior exams. (R. 1323). Afzal noted that Plaintiff "improve[d] with medications," id., and continued them, (R. 1326).

**B.    Opinion Testimony**

**1.    James Ellis, Ph.D.**

James Ellis, Ph.D., evaluated Plaintiff on July 1, 2020, at his attorney's recommendation. (R. 1352-55). Ellis reviewed Plaintiff's VA medical records between October 2019 and February 2020. (R. 1352). Plaintiff arrived at the appointment on time. Id. He was fairly groomed, oriented, displayed a logical and linear thought process, with appropriate affect and a depressed and anxious mood. (R. 1354). His impulse control was good, his insight and judgment were fair, his attention and concentration were good, and his estimated intelligence was average. (R. 1355). He denied suicidal ideation. (R. 1354).

During the video portion of the interview, Plaintiff maintained good eye contact and his "[e]motion was appropriate throughout." (R. 1352). He reported that his psychological symptoms began during his deployment in Iraq, and he had multiple traumatic experiences including combat exposure and loss of others. (R. 1353). Ellis found that Plaintiff met the criteria for PTSD, with symptoms including "recurrent distressing memories . . . , nightmares, anxiety, difficulty sleeping, difficulty trusting others, hypervigilance in public, irritability, and social isolation." Id. Ellis also found that Plaintiff met the criteria for major depressive disorder, with symptoms including "social isolation, depressed mood, sadness, lack of motivation, passive suicidal ideation, irritability, anxiety, and poor concentration." Id.

Also in July 2020, Ellis completed a check-box form that recorded Plaintiff's diagnoses as PTSD and major depressive disorder. (R. 1356). Ellis did not believe that Plaintiff was a

malingerer.  (R. 1357).  Plaintiff displayed signs and symptoms related to his mood, thought process, attention and concentration, fear and paranoia, behavioral and social, and sleep.  Id.  His most severe symptoms were anxiety, vigilance, traumatic recollections, nightmares, restless sleep, depressed mood, and guilt.  Id.   Ellis opined that Plaintiff had moderate to marked limitations affecting his understanding and memory, concentration and persistence, social interactions, and adaptation.  (R. 1359).  While Ellis checked boxes indicating that Plaintiff would not have "episodes of decompensation or deterioration" when working that would exacerbate his symptoms, Ellis did explain that Plaintiff "experience[d] hypervigilance occurring as a feeling that others around him may attempt to harm him in some way, contributing to anxiety and distraction." (R. 1358).  He estimated Plaintiff would be absent at least three times a month and that his opinion was retroactive to January 12, 2019, both without additional explanation.  (R. 1360).

Ellis also wrote a letter dated May 26, 2021 (the "May 2021 letter"), after the ALJ found that Plaintiff was not disabled.  In the May 2021 letter, Ellis "reiterate[d his] initial assessment" of Plaintiff's limitations, which Ellis opined "preclude him from performing any meaningful work." (R. 8).  Ellis also clarified that his assessment that Plaintiff would suffer from panic attacks was based on the VA treatment notes, which showed Plaintiff with an "anxious (and depressed) mood in virtually every office visit, and . . . he avoids crowds due to his anxiety." Id.  Ellis found that Plaintiff's primary psychological issues were PTSD and depression.  Id.

### 2.    Candace Lassiter, Psy.D.

Candace Lassiter, Psy.D., evaluated Plaintiff on October 1, 2020.  (R. 1412-16).  Lassiter found Plaintiff "engaged and cooperative," alert, oriented, and comfortable.  (R. 1412).  He reported a "good" mood and demonstrated an appropriate range of affect to the conversation.  Id.

He had limited social support but had one close friend. (R. 1413). Lassiter diagnosed Plaintiff with PTSD, generalized anxiety disorder, and major depressive disorder. (R. 1413-15).

### 3.  Mohammed Afzal, D.N.P.

On September 10, 2019, Afzal opined in a letter that Plaintiff was "unable to maintain steady employment due to his symptoms." (R. 1113). His correspondence did not explain the reasons for this opinion. See id.

In June 2020, Afzal completed a Psychiatric/Psychological Impairment Questionnaire. (R. 1303-07). In a check-box portion of the form, Afzal found signs and symptoms affecting Plaintiff's mood, thought, attention and concentration, fear and paranoia, behavioral and social, and sleep. (R. 1304). Afzal opined that the most severe or frequent symptoms were "[f]eeling depressed with anhedonia, low energy. Experiencing nightmares about traumatic experience." (R. 1305). He found that Plaintiff had a depressed mood, and depression and anxiety caused a deterioration in a work setting that would exacerbate his symptoms. Id. Afzal opined that Plaintiff had a range of limitations in understanding and memory, concentration and persistence, social interactions, and adaptation. (R. 1306). He also found that Plaintiff had none-to-mild limitations in understanding and remembering two-step instructions or asking simple questions or requesting assistance. Id. Afzal opined that Plaintiff's limitations "likely" applied back to January 12, 2019, although he first saw Plaintiff on July 1, 2019. (R. 1307).

Afzal completed another Psychiatric/Psychological Impairment Questionnaire in September 2020. (R. 1395-99). Afzal recorded Plaintiff's representation "that he [was] not able to work due to his PTSD." (R. 1395). Afzal noted that Plaintiff had PTSD and major depressive disorder but had not been hospitalized for those conditions. Id. Afzal recorded similar signs and symptoms to the June 2020 report on a check-box portion, (R. 1396), as well as Plaintiff's

limitations, (R. 1398). These were also similar to the earlier report, but Afzal marked that Plaintiff now had a moderate difficulty understanding and remembering one-to-two step instructions. Id.

In February 2021, Afzal completed a third Psychiatric/Psychological Impairment Questionnaire. (R. 1695-99). He again noted signs and symptoms supporting the diagnosis on a checkbox form. (R. 1696). He noted that "PTSD – nightmares, hypervigilance" would cause Plaintiff to deteriorate in a work setting. (R. 1697). He found that Plaintiff had none-to-mild difficulty remembering simple, one-to-two step instructions. (R. 1698). Afzal opined that Plaintiff's "PTSD symptoms may interfere with work duties," and that he would be absent from work two to three times per month because of his impairments. (R. 1699).

### 4. State Agency Psychologists

At the initial stage, Jo McClain, Psy.D., found that Plaintiff could "understand, carry out, and remember simple instructions and frequently understand and remember detailed ones." (R. 205). He found that Plaintiff could occasionally make simple work-related decisions. Id. He also found that Plaintiff could occasionally interact with the public and frequently respond to supervision. (R. 206). On reconsideration, Andrew Bockner, M.D., found the same limitations. (R. 221-23).

## C. Testimony Before the ALJ

The ALJ questioned Plaintiff at the second hearing on February 22, 2021. (R. 61). The ALJ also heard testimony from the VE, Herman W. Bates. Id.

### 1. Plaintiff's Testimony

On direct questioning by the ALJ, Plaintiff testified that he lived in a home by himself. (R. 64, 85). He said he had daily recollections of his traumatic experiences and difficulty concentrating. (R. 65). He said it worsened after leaving the military, id., but he was unsure of

when, (R. 71).  An Uber transported him to appointments because he was "traumatized by driving."

(R. 67).  He stated that he "barely clean[ed]" his house.  Id.  Nightmares caused sleeping difficulty.

(R. 69).  He testified that he lost concentration when something on the television screen triggered

his thoughts, (R. 73), but even daytime television or game shows might cause concentration loss,

(R. 74-75).

Plaintiff testified that he was "depressed all day" and did not find enjoyment in anything.

(R. 77-78); see also (R. 83) (reporting he did not "hav[e] a will, the desire to do things").  He was

"hypervigilant" around people and did not like to be around them, (R. 79), which was "mentally

draining" for him, (R. 82).  He testified he had sometimes gone "at least a month, maybe two

months without [interacting with anyone]," (R. 85), although he did attend medical appointments

and grocery shop, (R. 89-90).  He said he did not have "any relationships," and when he was home

alone, he was "peaceful" because he was "not around people."  (R. 85-86).

## 2.    Testimony from the VE

The VE characterized Plaintiff's position as a warehouse records clerk as light work.  (R.

92).  The ALJ's hypothetical for the VE posited a person with the same age, education, and work

experience as Plaintiff with the following limitations:

> He could only occasionally climb stairs, stoop, kneel, and crouch.  He should never
> climb ladders or crawl.  He can have no more than—should have no exposure to
> sustained loud noises, no more than frequent exposure to vibration, or to fumes,
> gases, and pulmonary irritants.  No more than occasional exposure to work-place
> hazards, such as unprotected heights and dangerous machinery.
>
> He should have no exposure to bright lights.  He can frequently, but not always,
> reach waist to shoulder level with the left arm. . . . [H]e is right-hand dominant.  He
> can frequently, but not always, reach overhead with the left arm.  He can frequently,
> but not always twist, either the cervical spine, that is the head, or the lumbar spine,
> it's in [the] lower back.  I would limit him to walking or standing only four hours
> total, in an eight-hour workday.  So, this is a limited, light.
>
> I would limit him to performing only simple, repetitive, and routine tasks.  Limited
> to only non-production paced tasks, as to tempo and capacity.  Limited to

maintaining a persistent effort on only routine tasks. Limited to only rare interaction with, with the public. Limited to only occasional interaction with coworkers and supervisors.

(R. 92-93). The VE testified that jobs would be available to such a person, identifying mail sorter (DOT 209.687-026) with 13,000 jobs nationally; merchandise marker (DOT 209.587-034) with 129,000 jobs nationally; and photocopy machine operator (DOT 207.685-014) with 25,000 jobs nationally. (R. 93-94).

The ALJ clarified that he was "concern[ed] for the interaction with humans, with others is at a marked level," and asked for further explanation on how these jobs satisfied the limitations. (R. 94). With rare meaning "five percent," the VE testified that there would be a 50% reduction in photocopy machine jobs, but "no significant reduction in the other positions," (R. 94-95).

The ALJ also asked whether jobs would remain if limited to sedentary. (R. 95). The VE testified that jobs would be available to such a person, identifying document preparer (DOT 249.587-018) with 19,000 jobs nationally and press clippings cutter and paster (DOT 249.587-014) with 6,500 jobs nationally.[3] Id. The ALJ also testified that, at a maximum, an individual could miss two days a month or be off task 15% of the time. (R. 96).

## III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

---

[3] The ALJ did not rely on this position because he did not "find that six thousand is a significant number." (R. 95).

support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.   ANALYSIS

Plaintiff's brief identifies three errors in the ALJ's decision that he claims warrants remand. He contends that the ALJ improperly evaluated opinion evidence from two healthcare providers as well as his own subjective statements about his symptoms, and that the ALJ's opinion is not sufficiently supported in light of new evidence submitted to the AC. As explained below, this Report finds no error in the ALJ's analysis. Accordingly, this Report concludes that remand is not warranted, and therefore recommends that the court affirm the Commissioner's decision.

A.   **Framework for SSA Disability Evaluation**

A person may file for and receive disability insurance benefits under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d).  As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); accord 20 C.F.R. § 404.1505(a).

An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

Social Security Administration ("SSA") regulations set out a sequential analysis which ALJs use to make their determination.  20 C.F.R. § 404.1520(a)(4).  Specifically, the regulations direct the ALJ to answer the following five questions:

1.   Is the individual involved in substantial gainful activity?

2.   Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3.   Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4.   Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5.   Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled.  An affirmative answer to questions three or five establishes

disability.  The claimant bears the burden of proof during the first four steps; if the analysis reaches

step five, the burden shifts to the Commissioner to show that other work suitable to the claimant

is available in the national economy.  See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly

v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled.  20

C.F.R. §§ 404.1520(a)(3); 404.1520b.  This includes "(1) the objective medical facts; (2) the

diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective

evidence of pain and disability; and (4) the claimant's educational background, work history, and

present age."  Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th

Cir. 1967)).  Ultimate responsibility for making factual findings and weighing the evidence rests

with the ALJ.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing King v. Califano, 599

F.2d 597, 599 (4th Cir. 1979)).

**B.**     **The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from

his alleged disability onset date until the hearing date.  (R. 31).  At step two, the ALJ found that

Plaintiff suffered from the following severe impairments: degenerative disc disease, left shoulder

disorder, depression, PTSD, and anxiety.  Id.  At step three, the ALJ found that Plaintiff did not

suffer from a listed impairment or combinations of impairments that met or medically equaled the

severity of one of the listed impairments.  (R. 32).  The ALJ developed a finding regarding

Plaintiff's RFC.  He determined Plaintiff was able

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except he could only
> occasionally climb stairs, stoop, kneel, and crouch.  He could never climb ladders
> or crawl.  He could have no exposure to sustained, loud noises.  He could have no
> more than frequent exposure to vibration, fumes, gases, or pulmonary irritants.  He
> could have no more than occasional exposure to workplace hazards such as
> unprotected heights or dangerous machinery.  He could have no exposure to bright
> lights.  He could frequently but not constantly reach waist-to-shoulder level or reach

overhead with the non-dominant left arm. He could frequently but not constantly twist either the cervical spine or the lumbar spine. He was limited to standing or walking up to 4 hours total in an 8-hour workday. He was limited to performing only single, repetitive and routine tasks. He was limited to only nonproduction-paced tasks as to tempo and capacity. He was limited to maintaining a persistent effort on only routine tasks. He was limited to only rare interaction with the public, coworkers, and supervisors, with "rare" defined as 5% of the time.

(R. 35-36). At step four, the ALJ concluded that Plaintiff could not perform any past relevant work.[4] (R. 45). At step five, the ALJ found work in the national economy Plaintiff could perform and therefore found that he was not disabled. Id.

## C.   Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinions Under the Controlling Regulations.

Plaintiff argues that the ALJ improperly evaluated opinion evidence from Afzal and Ellis. Pl.'s Mem. (ECF No. 12, at 12-13). Afzal, Plaintiff's treating doctor of nursing practice, opined that Plaintiff had many moderate to marked limitations. (R. 1303-07, 1395-99, 1695-99). Ellis, a consulting physician, also opined that Plaintiff had certain moderate to marked limitations. (R. 1357-60). The ALJ rejected these opinions as unpersuasive, (R. 43-44), which Plaintiff contends is error, Pl.'s Mem. (ECF No. 12, at 13). Because the ALJ appropriately evaluated Afzal's and Ellis's opinions as required by the applicable regulations,[5] remand is not required.

Under the rules, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers their overall "persuasiveness," id., and while

---

[4] The ALJ found that Plaintiff's past relevant work was as a warehouse records clerk. (R. 45). However, the ALJ noted that a prior decision had classified Plaintiff's past relevant work as a warehouse supervisor. Id. The ALJ found that Plaintiff "could not perform either job." Id.

[5] On January 18, 2017, the SSA adopted new rules for considering medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c. The new rules apply to all claims filed after March 27, 2017. Id. Because Plaintiff filed his claim on July 3, 2019, (R. 231), the new rules apply.

the ALJ may consider many factors in evaluating persuasiveness, he or she must explain only "the most important factors" of "supportability and consistency," § 404.1520c(b)(2). The ALJ discounted the opinions from both providers because they were unsupported by the providers' notes and inconsistent with the record as a whole. (R. 43-44). This finding is supported by substantial evidence.

### 1.     The ALJ's evaluation of Afzal's opinions is supported by substantial evidence.

Plaintiff insists that the ALJ improperly considered and applied the factors of consistency and supportability to Afzal's opinions. Pl.'s Mem. (ECF No. 12, at 13). Defendant argues that the ALJ was "quite clear" when analyzing Afzal's opinions, and that Plaintiff's arguments about supportability and consistency really contend "that the ALJ should have come to a different conclusion." Def.'s Opp'n (ECF No. 15, at 17). The ALJ thoroughly analyzed both factors, and his opinion is supported by substantial evidence.

#### a.     The ALJ's analysis of the supportability factor is supported by substantial evidence.

Supportability assesses whether the medical source supported the opinion with "objective medical evidence and supporting explanations," which increases the opinion's persuasiveness. 20 C.F.R. § 404.1520c(c)(1). Plaintiff identifies numerous facts that would support an alternative finding, such Afzal's notations that Plaintiff suffered from depressed mood, anxiety, and difficulty concentrating. Pl.'s Mem. (ECF No. 12, at 14 (citing R. 104, 1307, 1396, 1399, 1696, 1699)). However, the court must defer to the ALJ's findings if supported by substantial evidence. Perales, 402 U.S. at 390; see also Lewis, 858 F.3d at 865. This appeal is not an opportunity to relitigate the case. If "conflicting evidence allows reasonable minds to differ as to whether [Plaintiff] is disabled," then the court defers to the ALJ. Craig, 76 F.3d at 589 (quoting Walker, 834 F.2d at 640).

15

While the regulations dictate that greater consistency increases persuasiveness, 20 C.F.R. § 404.1520c(c)(1), the court is focused here on whether the reasons the ALJ gave for discounting Afzal's opinion—the reasons he found Afzal's opinion inconsistent with the evidence—are supported. The ALJ found Afzal's opinion inconsistent with his treatment records because Afzal (1) never adjusted Plaintiff's medications, recorded stable symptoms, and simultaneously observed that Plaintiff was "worsening, making progress, and presenting with the same symptoms and signs"; (2) referenced symptoms that did not appear in the records; and (3) did not have sufficient information about Plaintiff's prospective work to opine on absences. See (R. 43). The ALJ found overall that Afzal implemented a "routine and conservative course of treatment" despite opining that Plaintiff had severe limitations. Id. Each of the ALJ's observations is substantially supported within the record.

### i.     Inconsistent treatment records.

The ALJ found that Afzal's notes were of "questionable reliability" because he made "incompatible" observations. Id. Specifically, Afzal found Plaintiff to "be worsening, making progress, and presenting with the same symptoms all at once." Id. For example, in September 2019, Afzal recorded that Plaintiff had a "rough" mood and reported "stay[ing] at home feeling more depressed," (R. 852-53), and that Plaintiff's depression was "worsening," (R. 855), but also that Plaintiff was making progress toward his goals, (R. 856). Subsequent records continue this trend. Compare (R. 988, 1325, 1335, 1347) (worsening depression), with (R. 990, 1327, 1337, 1349) (making progress); see also (R. 1276, 1277).

Plaintiff responds that, given his "numerous mental impairments, including depression, anxiety, and PTSD, there is no reason why he could not make progress in treatment but still have worsening depression." Pl.'s Mem. (ECF No. 12, at 16). Plaintiff urges the court consider any

notations of improvement "in light of the overall diagnostic record." Pl.'s Mem. (ECF No. 12, at 16) (quoting Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014)). Cherry-picking occurs when an ALJ focuses on "a single treatment note that purportedly undermines [the source's] overall assessment of [the plaintiff's] functional limitations . . . ." Hudson v. Colvin, No. 12-cv-269, 2013 WL 6839672, at *8 (E.D.N.C. Dec. 23, 2013) (quoting Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011)). Here the ALJ did not cherry-pick because he identified more than a single inconsistency in Afzal's notations—indeed, he identified a consistent pattern of similar inconsistencies throughout nearly all of his treating records. See, e.g., (R. 852-57) (September 2019), (R. 985-90) (December 2019), (R. 1344-49) (April 2020), (R. 1332-37) (June 2020), (R. 1323-28) (June 2020). It was reasonable for the ALJ to question Afzal's notations that Plaintiff was worsening and making progress "all at once." (R. 43).

In addition to simultaneous worsening and progression, Afzal's records show Plaintiff remaining stable. Afzal never adjusted the dosage on Plaintiff's medication, see, e.g., (R. 989, 1277, 1326, 1336, 1347), and Plaintiff consistently reported 7/10 or 6/10 on his depression and anxiety, see, e.g., (R. 852, 986, 1280, 1323, 1344). At various points, Plaintiff told Afzal that he was "hanging in there," (R. 569), and "that his depression [was] the same," (R. 985, 1344). Plaintiff's mental status exams were generally similar. See, e.g., (R. 853, 986, 999, 1323). Afzal also recorded that Plaintiff improved with medication. See, e.g., (R. 853, 986, 998, 1323). Plaintiff argues that stability is not incompatible with mental disability, Pl.'s Mem. (ECF No. 12, at 17), citing cases from other circuits, Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000) ("[O]bservations that [claimant] is 'stable and well controlled with medication' during treatment does not support the medical conclusion that [clamant] can return to work."); Bauer v. Astrue, 532 F.3d 606, 609 (7th Cir. 2008) (finding that ALJ improperly discounted physician's opinion based

on "hopeful remarks"); see also Gude v. Sullivan, 956 F.2d 791, 793 (8th Cir. 1992) (finding remarks about stabilization "does not mean that [claimant's] symptoms have gone away"). But Afzal opined that Plaintiff had many moderate to marked limitations that could frequently and even constantly interfere with Plaintiff's workday.[6] See, e.g., (R. 1306). The stability observed by the ALJ in Plaintiff's treatment history belies that level of interference. Cf. Virginia B. v. Kijakazi, No. 1:20-cv-00493, 2021 WL 4515410, at *15 (E.D. Va. Aug. 17, 2021) (recommending affirming when ALJ found evidence of "stable mental state" was "inconsistent with the harsh conclusions reached by [the provider] in his opinion statements" under old rules), R. & R. adopted sub nom. Michael D. v. Kijakazi, 2021 WL 4513596 (E.D. Va. Oct. 1, 2021).

### ii.     Missing evidence of symptoms.

Second, the ALJ observed that Afzal "reference[d] symptoms that appear nowhere in his treatment record," including suicidal ideation. (R. 43). On each questionnaire, Afzal opined that Plaintiff suffered from suicidal ideation. (R. 1304, 1396, 1696). But Afzal's treatment notes indicate that Plaintiff routinely denied suicidal ideation while Afzal was examining him. See (R. 853) ("Veteran denies suicidal or homicidal ideations at the present time."); (R. 1279) (denying suicidal ideation in past month, and finding "[n]o method, no specific plan, and no intent"); see also (R. 986, 1327, 1333, 1345). Afzal always assigned a low suicide risk. See e.g., (R. 853, 987, 1324, 1333, 1346). The stark contrast between Afzal's treatment notes and his opinion supports the ALJ's overall assessment. See 20 C.F.R. § 404.1520c(c)(1).

Afzal also opined that Plaintiff would have moderate and moderate-to-marked limitations in memory and concentration, (R. 1306, 1398, 1698), but the ALJ observed that Afzal "[n]ever

---

[6] According to the questionnaire Afzal and Ellis completed, any moderate-to-marked limitations would frequently interfere, meaning 1/3 to 2/3 of an 8-hour workday, while marked limitations would constantly interfere, meaning more than 2/3 of an 8-hour workday. (R. 1306, 1359).

documented impaired memory . . . [or] concentration." (R. 43). While Plaintiff self-reported during intake that he had difficulty concentrating, (R. 569), Plaintiff has not identified any of Afzal's treatment notes showing difficulty in this area, see Pl.'s Mem. (ECF No. 12, at 16). Plaintiff similarly does not identify any contemporaneous records showing memory impairment. See id. Instead, Afzal always found him fully alert and oriented. See, e.g., (R. 853, 986, 1279, 1323, 1333, 1345). Plaintiff also typically displayed a "logical and goal directed" thought process. See, e.g., (R. 853, 986, 1279, 1323, 1333, 1345). Plaintiff shared details about his life with Afzal, including that he was "reading books and watching movies to pass the time." (R. 1344). Thus, Afzal's treatment records do not support his opinion.

Supportability requires at least some "objective medical evidence and supporting explanations," 20 C.F.R. § 404.1520c(c)(1), and a provider can generally be expected to note abnormalities in their treatment records, cf. Carol H. v. Kijakazi, No. 5:20-CV-00035, 2021 WL 3561241, at *12-13 (W.D. Va. Aug. 12, 2021) (affirming ALJ's opinion that claimant was only mildly impacted when, in part, her providers "failed to note any abnormalities in her attention, concentration, memory, or cognitive functioning"), R. & R. adopted by 2021 WL 4027199 (Sept. 3, 2021); Riffe v. Saul, No. 1:20-cv-00448, 2021 WL 5138180, at *11 (S.D. W. Va. June 7, 2021) (reciting ALJ's expectation that treating providers would "note those abnormalities on mental status evaluations"). For many of Afzal's opinions, he has no corresponding notations in his treatment records. Plaintiff fails to address this, see generally Pl.'s Mem. (ECF No. 12, at 12-21), and it was reasonable for the ALJ to find Afzal's opinions unpersuasive without this evidence.

### iii.    Opinion about absences.

Third, Afzal opined that Plaintiff would be absent several times a month. See (R. 1307, 1399, 1699) (opining at least two and sometimes more than three times a month). The ALJ

discounted this opinion because it was "not consistent with [Plaintiff's] course of treatment," and it was "inexplicable" that a provider would continue the same treatment without adjustment when symptoms were so debilitating. (R. 43). Plaintiff replies the ALJ was improperly playing doctor by considering his treatment conservative, particularly when "psychiatric conditions are not ordinarily treated by means other than psychotropic medications and therapy, as is the case here."[7] Pl.'s Mem. (ECF No. 12, at 18, 20).

In <u>Lewis v. Berryhill</u>, the Fourth Circuit rejected the ALJ's characterization of the treatment record as "conservative" when the claimant had "documented and exhaustive" medical history. <u>Lewis</u>, 858 F.3d at 868-69. But the ALJ here did not mischaracterize the evidence, and he not "interpret raw medical data in functional terms." <u>Edwards v. Astrue</u>, No. 8:08896, 2009 WL 764882, at *6 (D.S.C. Mar. 23, 2009) (quoting <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999)). While the ALJ did indicate potential treatment changes Afzal could have ordered—such as therapy, inpatient admission, or medication adjustment—the thrust of his opinion is that Afzal maintained the same course of treatment. <u>See</u> (R. 43). Opinions about breaks and absences are difficult to credit when a claimant was "treated conservatively with medication" and his mental impairments "were stable." <u>Carr v. Berryhill</u>, No. 6:16-CV-00010, 2017 WL 4127662, at *4 (W.D. Va. Sept. 18, 2017). And unlike in <u>Lewis</u>, where the evidence is at odds with the characterization, <u>Lewis</u>, 858 F.3d at 868-69, the evidence here is sufficiently straightforward to permit court review. Thus, the ALJ was not playing doctor.

---

[7] Plaintiff includes a citation showing that "[t]he history of brain surgery as a treatment for mental illness is not one the psychiatric community is proud of." Pl.'s Mem. (ECF No. 12, at 18) (citation omitted). But the ALJ's observation should not be read as requiring surgical treatment. An ALJ can consider "any factors . . . which tend to support or contradict the medical opinion." 20 C.F.R. § 416.927(c)(6). The absence of other treatment, such as "therapy or inpatient admission," is another example that Plaintiff's mental health symptoms were treated more conservatively than would be expected for the severity he is claiming, and that his mental symptoms were controlled. (R. 43).

The ALJ also discounted Afzal's opinion on absences because it presumed the nature of work and thus was a vocational opinion outside his area of expertise. (R. 43). Opinions about work ability are reserved to the Commissioner.   See 20 C.F.R. §§ 404.1520b(c), 404.1520b(c)(3)(i). However, even if Plaintiff's attendance was moderately impaired, that finding does not require a particular restriction aimed at attendance in his RFC. Cf. Stephens v. Colvin, No. 3-14-cv-25232, 2015 WL 7301684, at *16 (S.D. W. Va. Oct. 26, 2015) (clarifying that experts' function-by-function worksheets are not the RFC assessment), R. & R. adopted by 2015 WL 7302768 (Nov. 18, 2015); Pippen v. Astrue, No. 1:09cv308, 2010 WL 3656002, at *6 (W.D.N.C. Aug. 24, 2010) (clarifying that information on "the form should be used to provide a more detailed assessment of RFC"), R. & R. adopted by 2010 WL 3655993 (Sept. 15, 2010). The ALJ here imposed an RFC that accounts for Plaintiff's mental impairments by severely limiting his public interaction to 5% and by restricting him to simple routine repetitive tasks and no production pace work. (R. 35-36, 44). This accommodation mitigates mental limitations which the ALJ concluded would limit Plaintiff's ability to work, and they directly address Afzal's findings to the extent they are supported by record evidence.

### iv.   Additional considerations.

Although the ALJ's analysis of Afzal's opinions is thorough and supported by the evidence, as discussed above, a few points require additional comment.  Plaintiff spends a significant portion of his brief citing caselaw that evidence of psychiatric impairments might "consist of the diagnosis and observations of professionals," so psychiatric reports "should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation . . . ." Pl.'s Mem. (ECF No. 12, at 15) (quoting Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989)) (citing additional caselaw).  This argument is

unavailing here because the ALJ identified significant discrepancies in Afzal's own contemporaneous recorded observations.[8] See supra. Further, Afzal adjusted his questionnaire responses without explaining why Plaintiff's limitations changed. Compare (R. 1398) (finding a "moderate" limitation in understanding and remembering one-to-two step instructions), with (R. 1306, 1698) (finding "none-to-mild" limitation for the same). Plaintiff's caselaw is simply not analogous.

Lastly, Plaintiff insists that the ALJ should have developed the record further if he perceived inconsistencies in Afzal's notes. Pl.'s Mem. (ECF No. 12, at 17). An ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record" when the plaintiff's "evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (citations omitted). "The key consideration is whether the record contained sufficient medical evidence for the ALJ to make an informed decision regarding the claimant's impairment." Lehman v. Astrue, 931 F. Supp. 2d 682, 692-93 (D. Md. 2013) (quoting Craft v. Apfel, 164 F.3d 624, 1998 WL 702296, *3 (4th Cir. Oct. 6, 1998) (unpublished table opinion)) (cleaned up). However, the "ALJ is under no obligation to supplement an adequate record to correct deficiencies in a plaintiff's case."[9] Id. at 693 (citing Rice v. Chater, 53 F.3d 329, 1995 WL 253134, at *2 (4th

---

[8] Although unclear from the briefing, it appears Plaintiff may be arguing that observations appearing for the first time in Afzal's Psychiatric/Psychological Impairment Questionnaires are a sufficient basis for the new opinions. See Pl.'s Mem. (ECF No. 12, at 13-15). The questionnaires have a section allowing physicians to identify the signs and symptoms supporting the opined limitations. See (R. 1304, 1396, 1696). However, Plaintiff's last appointment with Afzal appears to be June 25, 2020, (R. 1322), the date of the first questionnaire, (R. 1307), so it does not appear that Afzal conducted new evaluations when completing the questionnaires. Moreover, the ALJ considers Afzal's treatment record as a whole, not each individual treatment record in a vacuum. See 20 C.F.R. § 404.1520(c).

[9] Plaintiff asserts that the ALJ had "an equal obligation to develop the record," relying on Carr v. Saul, 141 S. Ct. 1352 (2021) (emphasis added). Pl.'s Mem. (ECF No. 12, at 17-18). That case held that claimants did not waive any available appointments clause challenges arising under Lucia v. SEC, 138 S. Ct. 2044 (2018), by failing to raise the challenge with the ALJ. Carr, 141 S. Ct. at 1356, 1362. While that case

Cir. May 1, 1995) (unpublished table opinion)). Because there was sufficient evidence before the ALJ for him to decide the case, the ALJ was not required to contact Afzal for clarity about his opinions.

      **b.**      **The ALJ's evaluation of the consistency factor is supported by substantial evidence.**

Consistency assesses whether the medical source's opinion is "consistent . . . with the evidence from other medical and nonmedical sources," and greater consistency increases the opinion's persuasiveness. 20 C.F.R. § 404.1520c(c)(2). Defendant states that "[t]he ALJ dedicated several pages of his decision to an analysis of the many medical records provided," arguing that the ALJ's adequately explained how Afzal's opinion was inconsistent. Def.'s Opp'n (ECF No. 15, at 19-21). As discussed below, the ALJ rested his opinion on numerous relevant inconsistencies between Afzal's opinions and Plaintiff's overall medical treatment, each of which are supported in the record.

First, Plaintiff only received medication management from Afzal—he did not seek out other mental health treatment or engage in regular therapy. (R. 38). He had no visits to the emergency room with acute symptoms. Id. Besides appointments with Afzal, the record only contains one-time, non-treating evaluations from independent psychologists Ellis and Lassiter. Id. If Afzal believed Plaintiff's limitations were so severe, it is reasonable for the ALJ to assume that he would have referred Plaintiff to another provider for further evaluation and treatment. Cf. Bailey v. Saul, No. 2:19CV00011, 2020 WL 5524820, at *15 (W.D. Va. July 22, 2020) (affirming when physician treated claimant on outpatient basis and "neither recommended nor referred [the claimant] for more intense treatment for her psychiatric impairments"), R. & R. adopted by 2020

_____

rested its holding on the inquisitorial rather than adversarial nature of the ALJ proceedings, id. at 1362, the Supreme Court did not hold that the ALJ was equally responsible for developing the record.

WL 5790408 (Sept. 28, 2020).  In fact, Afzal's treatment notes about improvement with medication belie any inference that Afzal believed further treatment was necessary.  See, e.g., (R. 1323, 1333, 1345).

Second, other healthcare providers did not observe the same symptoms, such as distractibility or suicidal ideation.  (R. 38-39); see, e.g., (R. 1396) (reporting suicidal ideation, difficulty thinking and concentrating, and easy distractibility).  A phone technician noted that Plaintiff engaged in the conversation, asked relevant questions, and displayed a stable mood.  (R. 1339).  Lassiter found Plaintiff to be "engaged and cooperative," with appropriate thought processes, and no evidence of suicidal ideation.  (R. 1412-15).  To Lassiter, Plaintiff "presented with adequate attention and concentration," (R. 1412), although he did report that he had some trouble concentrating, (R. 1415).  Ellis assessed Plaintiff with a logical thought process, good attention and concentration, and no suicidal ideation during his evaluation.  (R. 1354-55).  In August 2019, Plaintiff reported on an adult function report that he did not have difficulty completing tasks, concentrating, understanding, or following instructions, although there was a notation about memory.  (R. 451).  Thus Afzal's opinion is not consistent with the record as a whole.

Plaintiff also argues that the ALJ should have considered the "length, frequency, and nature of the treatment," as well as supportability and consistency.  Pl.'s Mem. (ECF No. 12, at 19).  The ALJ is only required to explain these two "most important factors" in his opinion, 20 C.F.R. § 404.1520c(b)(2), but factors reflective of the treating relationship[10] may also factor into the

---

[10] Plaintiff cites Drake v. Saul, 839 F. App'x 584 (2d Cir. 2020), from the Second Circuit for proposition that treating source opinions are still important even under the new regulations.  Pl.'s Mem. (ECF No. 12, at 19).  That case applied the old regulations, see supra note 5, and only observed that there was "no meaningful difference between the two versions of the regulations for the purposes of this case," Drake,

opinion, § 404.1520c(c)(3). In this case, Afzal treated Plaintiff approximately once a month from July 2019, (R. 568), through at least June 2020, (R. 1322). However, the ALJ was justified in not discussing this when it was not an important factor under the regulations. Further, the most important factors of supportability and consistency greatly undermine the persuasiveness of Afzal's opinion, rendering additional discussion of the treating relationship unnecessary.

###    2.    The ALJ's evaluation of Ellis is supported by substantial evidence.

The ALJ found that Ellis's opinion was "not persuasive" under the same factors of supportability and consistency. (R. 43-44). Ellis evaluated Plaintiff once, (R. 1352-55), and then completed a Psychiatric/Psychological Impairment Questionnaire, (R. 1356-60). The ALJ found that Ellis's opinion in the questionnaire was not adequately supported by his objective assessment, and that it was not consistent with the record as a whole. (R. 43-44). His findings are supported by substantial evidence.

On supportability, the ALJ explained that Ellis's objective findings contradicted his medical opinions. Id. In fact, Ellis found that Plaintiff had "good" attention and concentration, (R. 1355), but opined that he had difficulty thinking or concentrating and was easily distracted, (R. 1357). Ellis found that Plaintiff denied suicidal ideation, (R. 1354), but opined that he experienced such ideation, (R. 1357). Ellis made no objective findings about memory, see (R. 1354-55), but opined that Plaintiff had poor memory, (R. 1357). Ellis's narrative covers some of these symptoms, but he does not explain this obvious disparity. For example, as the ALJ indicates, (R. 44), Plaintiff endorsed general feelings of survival guilt (i.e., wondering "why am I still here?") but also said his Christian faith protects him from suicide, (R. 1353-54). Ellis appears to have

---

839 F. App'x at 587 n.4. That holding does not resurrect prior caselaw affording weight to treating physicians, and it does not persuade the court to approach the analysis any differently.

interpreted Plaintiff's statement as both suicidal ideation and denial of suicidal ideation, but this is precisely what the supportability prong guards against. See 20 C.F.R. § 404.1520c(c)(1).

On consistency, the ALJ targeted Ellis's opinion that Plaintiff would have panic attacks. (R. 44) (citing R. 1357). But Plaintiff's treatment records do not show any evidence of panic attacks. Even in his letter to the AC, in which Ellis attempted to bolster the credibility of this opinion, Ellis could only identify VA records showing Plaintiff to be "anxious (and depressed) . . . in virtually every office visit" and avoidant of crowds. (R. 8). But Ellis did not identify any panic attacks in Plaintiff's medical records. Cf. Padilla v. Colvin, No. 4:15-CV-04023-JEH, 2016 WL 447421, at *5 (C.D. Ill. Feb. 4, 2016) (defining a panic attack as "an abrupt surge of intense fear or intense discomfort that reaches a peak within minutes" and is accompanied by specific symptoms (quoting Diagnostic and Statistical Manual of Mental Disorders 208 (5th ed. 2013))). Afzal also did not document panic attacks in his records, and he generally opined that Plaintiff would only experience intrusive recollections and scanning, not panic attacks. (R. 1304, 1396); but see (R. 1696) (checking box to "recurrent panic attacks"). The complete absence of documented panic attacks—or any history of panic attacks that Plaintiff self-reported to his providers—undermines the persuasiveness of Ellis's opinion.

Ellis's other findings are also inconsistent with the treatment records from other providers. His opinion contradicts Lassiter's findings that Plaintiff was "engaged and cooperative," with appropriate thought processes, with no active suicidal ideation. (R. 1412-15). Lassiter also indicated that Plaintiff presented with adequate attention, (R. 1412), in contrast to Ellis's harsh findings on concentration, (R. 1357). The ALJ also indicates that Ellis's concentration and memory-related symptoms do not comport with Afzal's. (R. 44). Ellis documented that Plaintiff suffered from poor recent memory and easy distractibility, (R. 1357), while Afzal did not record

these symptoms in his treatment records, see supra.  In sum, the ALJ's evaluation of Ellis's opinion is supported by substantial evidence.

### D. Substantial Evidence Supports the ALJ's Analysis of Plaintiff's Subjective Complaints.

Plaintiff argues that the ALJ should not have discounted his subjective statements about his impairments, Pl.'s Mem. (ECF No. 12, at 21-23), which he considers error under Arakas v. Comm'r, SSA, 983 F.3d 83, 95 (4th Cir. 2020).  Plaintiff also contends that the ALJ should not have considered his conservative treatment regimen and non-compliance with medication.  Pl.'s Mem. (ECF No. 12, at 23).  The ALJ found that Plaintiff's impairments could have caused the alleged symptoms, but that his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" as explained in his opinion.  (R. 37).  Substantial evidence supports his finding.

In Arakas, the Fourth Circuit emphasized that, after the ALJ finds that the claimant's impairment could produce symptoms, the ALJ "may not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate them."  Arakas, 983 F.3d at 95 (quoting SSR 16-3p, 2016 WL 1119029, at *4-5 (Mar. 16, 2016)) (cleaned up).  But Arakas concerned fibromyalgia, a disease that the ALJ misunderstood and only cursorily addressed.  See id. at 98; see also Donta J. v. Saul, No. 2:20CV131, 2021 WL 2711467, at *3 (E.D. Va. July 1, 2021) (distinguishing Arakas because the ALJ "listed the reasons for his decision").  In this case, the ALJ provided a detailed narrative discussing Plaintiff's "social withdrawal and hypervigilance around people, his difficulty concentrating due to intrusive thoughts, and his lack of motivation to do even basic daily tasks due to his depressed moods."  (R. 37).  Further, unlike fibromyalgia, this case does not involve "a disease with no objective medical evidence."  Hayes v. Kijakazi, No. 2:20-cv-03033, 2022 WL

1057179, at *11 (D.S.C. Jan. 27, 2022) (discussing spinal impairments), <u>R. & R. adopted sub nom.</u> <u>Debra Ann H. v. Kijakazi</u>, 2022 WL 796817 (D.S.C. Mar. 15, 2022); <u>see also</u> <u>Willa F. v. Kijakazi</u>, No. ADC-20-2659, 2021 WL 5167018, at *6 (D. Md. Nov. 5, 2021) (limiting ALJ's ability "to reject subjective complaints . . . when Plaintiff alleges impairments that do not produce objective medical evidence"). Because this case concerns mental impairments, and the ALJ provided a detailed evidentiary narrative, his analysis was not in error.

An ALJ is not "obliged to accept, without more, [a claimant's] subjective assertions of disabling pain and her subjective assessment of the degree of that pain." <u>Craig</u>, 76 F.3d at 591; <u>Tonya D. v. Kijakazi</u>, No. 7:20-CV-777, 2022 WL 1126623, at *7-8 (W.D. Va. Feb. 7, 2022). An ALJ is also "not required to make specific findings related to each of [the claimant's] subjective assertions."[11] <u>Tonya D.</u>, 2022 WL 1126623, at *7 (citing <u>Shinaberry v. Saul</u>, 952 F.3d 113 (4th Cir. 2020)). Here, the ALJ reviewed Plaintiff's hearing testimony in detail and then considered it alongside the other evidence, including records from Afzal and Ellis, <u>see</u> (R. 36-38), thus properly evaluating Plaintiff's subjective complaints, <u>see</u> <u>Paulette B. v. Kijakazi</u>, No. CBD-20-3691, 2022 WL 888423, at *6 (D. Md. Mar. 24, 2022) (affirming when "the ALJ considered many factors when determining Plaintiff's RFC, and thus did not require Plaintiff to prove her subjective complaints by objective medical evidence").

Plaintiff mainly contends that the ALJ erred by considering his treatment regimen conservative. Pl.'s Mem. (ECF No. 12, at 23). The ALJ discounted Plaintiff's subjective symptoms in part because they were "inconsistent with his course of treatment," which "has been

---

[11] Plaintiff does not identify in his briefing which subjective allegations the ALJ failed to adequately consider. <u>See</u> Pl.'s Mem. (ECF No. 12, at 22-23); <u>see also</u> Def.'s Opp'n (ECF No. 15, at 24) ("Plaintiff's objection identifies no evidence that the ALJ failed to consider and simply invites the Court to reach a contrary conclusion."). The court thus only considers whether the ALJ followed the regulations.

remarkably routine and not consistent with multiple marked limitations or an extreme limitation in any area of functioning." (R. 37). The ALJ could properly consider Plaintiff's failure to seek alternative treatment[12] as evidence that his symptoms are not as severe as he alleges:

> A claimant's persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, or referrals to specialists, may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent. However, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . the ALJ may reasonably conclude the intensity, persistence, and limiting effects of his symptoms are not as great as he alleges.

Darrell M. v. Kijakazi, No. CV 1:21-488-MGL-SVH, 2022 WL 447698, at *12 (D.S.C. Jan. 27, 2022) (first quoting Arakas, 983 F.3d at 102; and then quoting SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 24, 2017)) (cleaned up), R. & R. adopted sub nom. McCord v. Kijakazi, 2022 WL 447190 (D.S.C. Feb. 14, 2022). Plaintiff's only treatment provider was Afzal, whom he saw for medication management approximately once a month. See (R. 1303). The ALJ described Afzal's treatment notes as "remarkably static," (R. 38), with Plaintiff consistently reporting 7/10 or 6/10 on his depression and anxiety, see, e.g., (R. 852, 986, 1280, 1323, 1344). Afzal's notes do not report Plaintiff requesting referrals or complaining that the dosages were insufficient. The ALJ could permissibly characterize Plaintiff's treatment as routine with those findings.

Plaintiff also contends that the ALJ improperly considered any non-compliance with medication because it was outside the relevant timeframe. Pl.'s Mem. (ECF No. 12, at 23). The ALJ observed that, in 2018 (before the alleged onset date), pharmacy records showed missed prescription fills, but Plaintiff insisted he was complaint. (R. 37) (citing 586-90, 610). The ALJ

---

[12] Plaintiff has not alleged that his failure to seek additional treatment was caused by financial constraints. See Darrell M. v. Kijakazi, No. 1:21-488-MGL-SVH, 2022 WL 447698, at *13 (D.S.C. Jan. 27, 2022), R. & R. adopted sub nom. McCord v. Kijakazi, 2022 WL 447190 (D.S.C. Feb. 14, 2022).

did not specify which factual allegation he credited. See id. However, omitting this dispute would not have altered the outcome whatsoever. See Ross v. Berryhill, No. 3:18-CV-42, 2019 WL 289101, at *12 (E.D. Va. Jan. 3, 2019) (discussing harmless error doctrine), adopted by 2019 WL 281191 (E.D. Va. Jan. 22, 2019). Plaintiffs must do more than identify some isolated logical flaw or lack of clarity to win remand. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). The ALJ in this case had sufficient alternate reasons, as discussed above, for discounting Plaintiff's subjective symptoms, and any concern about medication non-compliance in 2018 does not materially impact his decision.

## E. The Appeals Council Properly Found that Cumulative Evidence Produced After the ALJ Hearing Did Not Show Reasonable Probability of a Different Outcome.

The AC found that the May 2021 letter,[13] which Plaintiff submitted after the ALJ's decision, would not reasonably have changed the outcome. (R. 1-2). Plaintiff contends that this was error because the letter is new and material evidence undermining the supportability of the ALJ's decision. Pl.'s Mem. (ECF No. 12, at 23-24). Defendant responds that the letter is neither new nor material, and it would not reasonably have compelled a contrary conclusion from the ALJ. Def.'s Opp'n (ECF No. 15, at 24-27). As the letter is duplicative of material already in the record, and Plaintiff could have reasonably obtained Ellis's opinion before the ALJ hearing, I agree.

Claimants who are "dissatisfied with the hearing decision . . . may request that the Appeals Counsel review that action." 20 C.F.R. § 404.967. The AC may consider evidence that is (a) new, (b) material, and (c) relates to the period of alleged disability, and "there is a reasonable probability

---

[13] Plaintiff also submitted medical records from Genesis Counseling Center Norfolk (March 4, 2021) and Mustang Family Medicine (May 18, 2021) for the AC's review. (R. 2). The AC refused to consider these, id., and Plaintiff does not challenge that decision in this appeal, see Pl.'s Mem. (ECF No. 12, at 23-24).

that the additional evidence would change the outcome of the decision." § 404.970(a)(5); see also Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). If the additional evidence qualifies, then the AC "evaluates the entire record including the new and material evidence," and remands or decides the case only when "the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record . . . ." Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011) (quoting 20 C.F.R. § 404.970(b)) (cleaned up). If the AC denies review, as it did in Plaintiff's case, "the decision of the ALJ becomes the final decision of the Commissioner." Id. at 704 (quoting Wilkins, 953 F.2d at 96) (cleaned up). A district court must then "review the record as a whole[,] including any new evidence that the Appeals Council specifically incorporated into the administrative record." Id. (quoting Wilkins, 953 F.2d at 96) (cleaned up). The May 2021 letter was not incorporated into the record by the AC, (R. 2), and Plaintiff has not shown that the AC should properly have considered it as new and material evidence.

### 1.   The May 2021 letter is not new.

Plaintiff insists that the May 2021 letter is new because "it was not before the ALJ." Pl.'s Mem. (ECF No. 12, at 24). But the newness inquiry is not simply whether the document itself was presented to the ALJ. "Evidence is new if it is not duplicative or cumulative" of material already in the record. Meyer, 662 F.3d at 705 (quoting Wilkins, 953 F.2d at 96). Ellis's opinion is cumulative. He only offered "clarification" and "reiterat[ed his] initial assessment that [Plaintiff's] multiple impairments . . . preclude him from performing any meaningful work." (R. 8). A reiterated or clarified opinion is not helpful or new. See Meyer, 662 F.3d at 705. Ellis also did not reevaluate Plaintiff before writing the letter; he merely reviewed the evidence again to identify materials that supported his opinion. See (R. 8). A claimant cannot simply "retain[] an expert to

reappraise the evidence and come up with a conclusion different" than the ALJ's. Fagg v. Chater, 106 F.3d 390 (4th Cir. 1997) (unpublished) (quoting Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 (1st Cir. 1987)). Lastly, the records he identified—the VA records from Afzal—were before the ALJ. Pointing the ALJ to pre-existing evidence is not sufficient to generate new evidence.

New evidence also cannot have been "available to the claimant at the time of the administrative proceeding . . . ." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990) (interpreting 42 U.S.C. § 405(g)); see also Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991) (discussing remands under 42 U.S.C. § 405(g)). Ellis evaluated Plaintiff in July 2020, (R. 1352), but Ellis's letter was not written until May 2021, (R. 8), over two months after the ALJ's negative decision, (R. 47). Plaintiff could have requested Ellis's opinion at any point before the hearing. However, a certain line from Ellis's opinion makes his purpose clear: "It is my understanding that my assessment was rejected—in part—because I noted that [Plaintiff] suffered from recurrent panic attacks . . . ." (R. 8). The May 2021 letter evidence was not unavailable before the hearing; rather, Plaintiff decided to request the evidence in response to the ALJ's observation that Ellis had identified symptoms with no support in the medical record.

Relatedly, a claimant has an affirmative duty to provide the ALJ with "all of the evidence" at least five days before the hearing. 20 C.F.R. § 404.935(a). Defendant argues that Plaintiff conceded the completeness of the record during the administrative hearing. Def.'s Opp'n (ECF No. 15, at 26). When the ALJ asked if he should be aware of "any errors or material omissions," Plaintiff's counsel responded negatively, confirming that "the file [was] also complete up through [the hearing date]." (R. 62). Thus, it was not until after the negative administrative decision that

Plaintiff desired to expand the record.  It would not be efficient to permit expansion under these facts.

### 2.    The May 2021 letter is not material.

Plaintiff argues that the May 2021 letter is material because it "specifically rebuts the ALJ's lay speculation that additional findings would not be present on examination to prove the disabling limitations found for [Plaintiff]."  Pl.'s Mem. (ECF No. 12, at 24).  Material evidence provides "a reasonable possibility that the new evidence would have changed the outcome."  Meyer, 662 F.3d at 702 (quoting Wilkins, 953 F.2d at 96).  Defendant argues that the late-submitted evidence would not have changed the outcome of the proceedings.  Def.'s Opp'n (ECF No. 15, at 26).  It is not reasonably probable it would have.

Ellis points the AC toward certain medical records that he believes support his opinion, including VA treatment records.  (R. 8).  But Defendant points out that these records were also available to the ALJ.  Def.'s Opp'n (ECF No. 15, at 26).  Ellis relied on records showing that Plaintiff had an "anxious (and depressed) mood in virtually every office visit," (R. 8), but the ALJ reviewed Afzal's observation that Plaintiff "was depressed and anxious" with "identical mental status examination findings" in all his records, (R. 38).  Ellis points out that Plaintiff "avoids crowds due to his anxiety," (R. 8), but the ALJ reviewed Afzal's findings on Plaintiff's isolation during the relevant timeframe, see (R. 38).  Therefore, pointing to records that the ALJ had already observed does not make Ellis's opinion likely to have caused a different result.  Cf. Williams v. Saul, No. 1:19-CV-983, 2020 WL 5802707, at *9 (E.D. Va. Sept. 29, 2020) (observing that "much of Plaintiff's untimely evidence was considered because it had already been included in the record").

Ellis also opined on a topic reserved the Commissioner.  The ALJ is not required to "provide any analysis about how" he or she considered evidence that is "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c).  Inherently invaluable evidence includes evidence on issues reserved to the Commissioner—including statements of disability.  § 404.1520b(c)(3)(i). Ellis opined that Plaintiff's limitations "preclude him from performing any meaningful work." (R. 8).  The ALJ was not required to consider this, a point that the ALJ emphasized regarding similar opinions from Afzal and other providers.  See (R. 42).  Finally, it bears renewed mention that Ellis, whose office is in New York City, examined Plaintiff once before preparing his original report. See (R. 1352).  As the May 2021 letter contained neither new nor material evidence, the AC was not required to consider it, and the ALJ's opinion is supported by substantial evidence.

### E.      The ALJ Built a Logical Bridge to His Conclusion.

Plaintiff criticizes the ALJ's decision because "[n]o medical source opined that [Plaintiff] can perform full-time work with only [those] mental limitations" in the RFC. Pl.'s Mem. (ECF No. 12, at 20).  Plaintiff implies that the ALJ needed a medical opinion stating that he could perform work within the specific RFC.  See id.  As discussed above, the new regulations preserve the rule that an opinion about whether a claimant is disabled is reserved to the Commissioner.  See 20 C.F.R. §§ 404.1520b(c), 404.1520b(c)(3)(i).  In fact, the regulations prohibit considering statements that a claimant can perform work, as well as statements that a claimant cannot.  20 C.F.R. § 404.1520b(c)(3)(i) (concerning "[s]tatements that you are . . . able to perform regular or continuing work" (emphasis added)).  Thus, an opinion specific to Plaintiff's RFC and capacity to work was not required, nor would it have been persuasive if given.

Plaintiff also contends that the ALJ, as a "layman," was "not competent to determine a claimant's RFC finding without the support of some medical evidence." Pl.'s Mem. (ECF No. 12, at 21).  But this ignores the ample medical evidence on which the ALJ relied.  The RFC "is an

administrative assessment made by the Commissioner based on all the relevant evidence in the case record." Felton-Miller v. Astrue, 459 F. App'x 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Any "argument that the ALJ's RFC finding is not supported by substantial evidence because the ALJ is a layman and did not obtain an expert medical opinion . . . is without merit." Id. at 230.

Plaintiff makes the related argument that the ALJ did not "provide a narrative discussion of any evidence, medical or non-medical," supporting the RFC. Pl.'s Mem. (ECF No. 12, at 20). An ALJ's RFC assessment requires a logical explanation connecting the evidence to the ALJ's conclusion. Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019); see also Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. 2018) (requiring the ALJ to "provide a coherent basis" for a determination). Here, the ALJ found "[a]fter careful consideration of the evidence" that Plaintiff's statements were inconsistent with the medical and record evidence. (R. 37). He provided a long narrative explanation for the RFC with a plethora of record citations. See (R. 35-45). He clarified that the various limitations he found relied on evidence "elsewhere in this decision," (R. 44), which is permissible, Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (holding the ALJ does not need to "specifically refer to every piece of evidence") (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). In short, as detailed above with Plaintiff's other contentions, the ALJ's opinion is supported by substantial evidence.

Finally, it is worth observing that the ALJ accounted for Plaintiff's limitations in a severely restrictive RFC. The RFC "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1) (emphasis added). The ALJ developed a highly restrictive RFC, including limiting Plaintiff to 5% interaction with the public. See (R. 36, 44). This targets what is apparently one of Plaintiff's greatest limitations of social interaction. See (R. 36, 44); see also

(R. 94-95) (querying VE to ensure requirement). Plaintiff represented that he sometimes went months without human connection and was "peaceful" at home alone because he was "not around people." (R. 85-86). Ellis recorded Plaintiff's trust difficulties, hypervigilance in public, and social isolation, (R. 1353); and Lassiter noted limited social support, (R. 1413). The state agency psychologists also found that Plaintiff could only occasionally interact with the public. (R. 206, 222). But Plaintiff could still socially interact in rare instances. He communicated effectively with both Ellis and Lassiter. (R. 1352, 1412). He asked relevant questions. (R. 1339). And as the ALJ observed, a June 2020 record implied that Plaintiff had been going to the gym until prevented by the COVID-19 pandemic. (R. 38) (citing R. 1332). Plaintiff also testified that he attended medical appointments and grocery shopped. (R. 89-90). The ALJ carefully handled Plaintiff's social difficulties, and it is clear from the highly restrictive RFC that, although Plaintiff does have severe limitations, the ALJ accounted for them. The VE then testified that jobs were available with this RFC. (R. 92-95). This was precisely what the regulations require of the ALJ, and remand is not warranted.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 14), DENY Plaintiff's Motion for Summary Judgment (ECF No. 11), and AFFIRM the Commissioner's finding of no disability.

## VI. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C.

§ 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

  2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

  The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
June 13, 2022